IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CORY CAIN,** | No. |
| Plaintiff, | |
| v. | |
| **URBAN PREP ACADEMIES,** | |
| Defendant. | |

### COMPLAINT

Plaintiff, Cory Cain, through his attorneys Case + Sedey, LLC, files the following Complaint against Defendant Urban Prep Academies.

### Parties and Jurisdiction

1. Plaintiff, Cory Cain, ("Plaintiff") is a citizen and resident of Chicago, Cook County, Illinois.

2. Defendant Urban Prep Academies ("Defendant") is a non-for-profit public charter high school located in Chicago, Cook County, Illinois.

3. Jurisdiction is conferred on this Court by the below-named statute, as well as by 28 U.S.C. § 1331, §1343(a) and § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) and (c).

### Facts

4. Plaintiff began working for Defendant in August 2010 as a Teacher. In August 2015 Defendant promoted Plaintiff to Assistant Principal and in 2017 Defendant again promoted him, this time to the role of Principal. While working for Defendant, Plaintiff created Urban Prep's first strategic plan, secured funding to implement a mastery-based grading program, which

dramatically improved students' SAT English/Writing scores, rewrote the school's core curriculum aligning it to state & college-readiness standards and reduced annual costs by $100,000 by controlling spending. As a result, he was consistently rated as meeting or exceeding expectations.

**Plaintiff lodges internal complaints about the Dean of Students' inappropriate behavior.**

5. In 2018, Plaintiff became concerned about Defendant's Dean of Students, Krishaun Branch's, behavior toward staff and students. Plaintiff reported these concerns to Dennis Lacewell, Chief Academic Officer. Among the concerns that Plaintiff reported were that Mr. Branch used sexually inappropriate language in the office, cursed at students and, in one instance, slammed a student on the ground.

6. Plaintiff also told Mr. Lacewell that Mr. Branch inappropriately stared at female colleagues and visitors and repeatedly made comments about women's bodies and what he "would like to do to them" sexually.

7. Mr. Branch was a graduate of Defendant and was featured in a PBS documentary which focused on his transition from an Urban Prep high school student to a college graduate. While Mr. Lacewell allowed Plaintiff to discipline Mr. Branch, he refused to authorize his termination because he claimed that Mr. Branch was the "face of Urban Prep."

8. Then, in October 2019, Plaintiff received a complaint that Mr. Branch sexually harassed staff members at City Colleges of Chicago where Defendant housed its West campus. Plaintiff reported this to Mr. Lacewell and, again, recommended Defendant terminate Mr. Branch. Plaintiff told Mr. Lacewell that because of Mr. Branch's past behavior, including making sexually inappropriate comments at work, he was concerned for the City College's employees and also for Defendant's own staff and students. Despite this, Mr. Lacewell still refused to terminate Mr. Branch and Plaintiff continued to express his frustration with that refusal. That same day, Plaintiff

also contacted Defendant's Human Resources Director and told her about the complaint against Mr. Branch. Instead of investigating the issue, the Director berated Plaintiff, telling him that he was not trained to deal with the situation and that Defendant would not do anything about it.

**Plaintiff learns that Defendant falsified numbers to the Illinois State Board of Education.**

9. In Chicago, charter schools are typically authorized by Chicago Public Schools ("CPS"). CPS grants non-profit organizations such as Defendant the authority to operate schools and funds those charter schools on a per-pupil basis. As a result, schools with higher enrollment have more funds for teachers, administrators, and general operations.

10. If a charter school's enrollment declines, its funding declines as well and CPS can revoke the charter.

11. In December 2018, CPS voted to revoke Defendant's West campus' charter and close the school at the end of the 2018-2019 school year. CPS contended that Defendant had failed to make reasonable progress toward achievement of performance standards.

12. In January 2019, Defendant appealed the decision to the Illinois State Charter School Commission ("Commission") and asked to remain open in the 2019-2020 school year and beyond.

13. On April 4, 2019, the Commission reversed the CPS closure decision. As a result, Defendant became an Illinois State Board of Education ("ISBE") charter school and was, accordingly, bound by ISBE rules.

14. Because of the uncertainty regarding Defendant's opening for the 2019-2020 academic year, enrollment at the West campus had plummeted. Defendant and its staff were under extreme pressure to ensure they had enough students at the West Campus to obtain sufficient funding to run the school and to maintain their charter.

15. In June and July of 2019, Plaintiff began preparing the West campus' rosters of incoming students. Per ISBE rules, Defendant was required to submit these numbers to ISBE prior to the start of the year.

16. During this process, Mr. Lacewell stepped in and told Plaintiff that he and his team would handle the freshman list. Plaintiff thought this unusual in that Mr. Lacewell had never done this.

17. A couple of weeks later, Plaintiff saw Mr. Lacewell's freshman roster which listed sixty incoming freshmen. Plaintiff suspected that this list was false, and that Mr. Lacewell had grossly inflated it. Because he was the one responsible for submitting the list to ISBE, Plaintiff had his Manager of Student Information contact the parents of the listed students. Most of those parents said either that they had never been contacted by the school, or that they had never received letters of acceptance. Upon learning this, Plaintiff confronted Mr. Lacewell, told him he believed the numbers were falsified and said that he would not submit them to ISBE until each student was confirmed. Mr. Lacewell disagreed and tried to force Plaintiff to submit the list to the Commission. Plaintiff continued to refuse. Ultimately, Mr. Lacewell became frustrated and told Plaintiff that his team would handle it.

18. In late July, Mr. Lacewell told Plaintiff that his team had confirmed all the freshmen on the list and ordered Plaintiff to submit it to ISBE. Plaintiff continued to question him about the numbers, but Mr. Lacewell assured him that the students had all been verified. Based on these assurances, Plaintiff submitted the rosters to ISBE.

19. As it turns out, Plaintiff's initial concerns were well-founded. On the first day of school, all the students on Plaintiff's sophomore through senior lists arrived for school. Of the sixty freshmen Mr. Lacewell had listed, only twelve arrived on that first day. A representative

from ISBE was present at the West campus on the first day of school and was furious to discover there were 48 fewer freshmen than what Defendant had represented.

20. Plaintiff was also upset because it was clear that Mr. Lacewell had lied to him about verifying the students. Later that day, Plaintiff contacted the ISBE representative and explained what had happened, including that he believed that Mr. Lacewell falsified the numbers and lied to him about having verified them.

21. Less than one month later, Mr. Lacewell gave Plaintiff a low performance review. Prior to this, Defendant had never indicated that it was not happy with Plaintiff's performance.

22. Then, on November 12, 2019, Mr. Lacewell terminated Plaintiff claiming the West Campus needed to "reduce costs." Mr. Lacewell then promoted Plaintiff's Vice Principal, Darryl Lacey, to the principal role. Mr. Lacey made approximately the same each year as Plaintiff but had never lodged internal or external complaints as Plaintiff had.

23. In July of 2021, Defendant hired an assistant principal for the West Campus giving the school two principals even though it has less students than when Plaintiff worked there.

**COUNT I-RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

24. Plaintiff incorporates the preceding paragraphs 1-23 as though set forth herein.

25. Plaintiff engaged in protected conduct when he reported and objected to the Dean of Student's inappropriate sexually based comments about women and his sexual harassment of staff members.

26. Soon after he lodged these complaints and pressed for Mr. Branch's termination, Mr. Lacewell gave Plaintiff his lowest ever review and then terminated him shortly thereafter.

27. The reason provided for Plaintiff's termination (cost savings) was false in that Defendant replaced Plaintiff with his Vice Principal who made close to the same salary as Plaintiff

but who was less experienced and less tenured than Plaintiff. Furthermore, in July 2021, Defendant hired an assistant principal for its West Campus which again has two principals but with less students than attended when Plaintiff worked there.

28. As a result of this unlawful termination, Plaintiff suffered lost wages and benefits as well as emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order finding that Defendant violated Title VII of the Civil Rights Act and award him lost pay and benefits as well as compensatory damages and attorneys' fees in amounts to be determined at trial.

### COUNT II-COMMON LAW RETALIATORY DISCHARGE

29. Plaintiff incorporates paragraphs 1-23 as though set forth herein.

30. Plaintiff internally complained about and objected to Defendant's submission of fraudulent enrollment information to ISBE.

31. Plaintiff also reported this fraudulent conduct to a representative at ISBE.

32. Less than one month later Plaintiff received a below average review and was terminated soon thereafter.

33. As a result of his internal and external complaints, Defendant terminated Plaintiff.

34. As a result, Plaintiff suffered lost wages and benefits as well as emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court award him lost wages and benefits, compensatory and punitive damages and attorneys' fees in amounts to be proven at trial.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

                              Respectfully Submitted,

                              CORY CAIN

                              By: /s/ *Kristin M. Case*
                              One of His Attorneys

Kristin M. Case
Kate Sedey
Case + Sedey, LLC
250 South Wacker Dr., Suite 230
Chicago, Illinois 60606
312-920-0400
312-920-0800 (fax)
Kcase@caseandsedey.com